[670 NYS2d 497]

In the Matter of HOWARD J. POBINER (Admitted as HOWARD JOSEPH POBINER), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, March 2, 1998

**APPEARANCES OF COUNSEL**

*Gary L. Casella,* White Plains *(Faith Lorenzo* of counsel), for petitioner.

*Gentile & Benjamin,* New York City *(Howard Benjamin* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition dated April 10, 1996, which contained 12 charges of professional misconduct against him. In his answer, the respondent admitted most of the factual allegations contained in the petition, but denied that he was guilty of any professional misconduct. By a stipulation dated August 27, 1996, Charges Eight and Ten were amended, and the parties agreed to the facts that were not in dispute. After a hearing, the Special Referee sustained all of the charges. The Grievance Committee now moves to confirm the Special Referee's report, and the respondent cross-moves to disaffirm the Special Referee's report with regard to Charges One, Two, Three, Four, Seven, Eight, Nine, Ten, and Twelve. The respondent does not challenge the Special Referee's findings with regard to Charges Five, Six, and Eleven.

Charges One and Two allege that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (A) (5) (22 NYCRR 1200.3 [a] [5]), and conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), and that the respondent permitted a person who paid him to render legal services for another to direct or regulate his professional judgment, in violation of Code of Professional Responsibility DR 5-107 (B) (22 NYCRR 1200.26 [b]):

1. The respondent represented Ruth Pacchiana in a matrimonial matter.

2. The stipulation of settlement in the Pacchiana matter stated, "Simultaneously with the execution of this agreement the husband will pay towards the legal fees of the wife the sum of $50,000".

3. This stipulation was incorporated by reference into the judgment of divorce.

4. The respondent received payment of the $50,000 from Mr. Pacchiana, not for legal services that the respondent provided to Mrs. Pacchiana, but instead to make the respondent "go away or back off from trial".

5. The $50,000 represented what it would have cost Mr. Pacchiana to pay the respondent on a counsel fee application at the end of a trial.

6. The respondent's actions may have prejudiced his client.

Charge Four alleges that the respondent accepted compensation for legal services from one other than his client without getting the consent of his client after full disclosure, in violation of Code of Professional Responsibility DR 5-107 (A) (1) (22 NYCRR 1200.26 [a] [1]):

1. The factual allegations of Charge One paragraphs 1, 2, and 3, are repeated and realleged as if fully set forth herein.

2. The respondent advised Mrs. Pacchiana that the $50,000 from Mr. Pacchiana would be a counsel payment.

3. Mrs. Pacchiana did not know at the time she signed the stipulation that she would not receive a refund of any unused portion of the $50,000.

Charge Five alleges that the respondent failed to promptly return an unearned fee in violation of Code of Professional Responsibility DR 9-102 (C) (4) (22 NYCRR 1200.46 [c] [4]):

1. Mrs. Pacchiana did not agree to pay the respondent a premium and requested a refund of the unused portion of the $50,000 fee the respondent received from Mr. Pacchiana.

2. By a check dated March 5, 1993, the respondent disbursed $30,000 to Mrs. Pacchiana.

3. Mrs. Pacchiana misplaced the $30,000 check and requested that the respondent issue her a new one.

4. The respondent failed to return the $30,000 to Mrs. Pacchiana.

Charge Six alleges that the respondent failed to promptly return an unearned fee in violation of Code of Professional Responsibility DR 9-102 (C) (4) (22 NYCRR 1200.46 [c] [4]):

1. The respondent's October 5, 1993, billing statement to Mrs. Pacchiana indicated that there was a $2,391.04 credit balance remaining.

2. The respondent failed to return the $2,391.04 to Mrs. Pacchiana.

Charge Seven alleges that the respondent failed to promptly return an unearned fee in violation of Code of Professional Responsibility DR 9-102 (C) (4) (22 NYCRR 1200.46 [c] [4]):

1. In approximately 10 cases or less a year, the respondent has portions of unused retainers left over at the end of his representation and, in some of those cases, he sends the money back with a cover letter.

2. In a portion of those cases, when the respondent does not hear from the client for a period of several months and the

money remains with him, he pays taxes on the money and does not refund it.

3. The respondent does not notify those clients that they have a credit balance with him until sometime between the end of the year and April 15th of the next year when he prepares his tax return.

4. It is only at that point that the respondent recognizes that there are a handful of his clients who have a credit balance, at which time the respondent notifies them.

Charge Eight, as amended, and Charge Nine allege that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), and that the respondent accepted employment, without the consent of his client after full disclosure, when the exercise of his professional judgment might be affected by his own financial, business, property, or personal interests, in violation of Code of Professional Responsibility DR 5-101 (A) (22 NYCRR 1200.20 [a]):

1. The respondent represented Jane Josephs in a matrimonial matter in or about 1986.

2. Jane Josephs had no immediate funds with which to pay a retainer.

3. The respondent asked Jane Josephs if she had any item of value that she could post as security.

4. Jane Josephs advised the respondent that she had an approximately eight-carat diamond ring that she agreed to post as security.

5. The respondent advised Jane Josephs that he would keep the ring in a safe that he had at his home.

6. On or about July 14, 1986, a settlement was reached.

7. According to the respondent's billing statement, Jane Josephs owed the respondent approximately $12,100 in legal fees at that time.

8. The respondent prepared a handwritten document dated July 14, 1986, for Jane Josephs' signature which stated: "For immediate and *excellent* legal services above and beyond the call of duty I release the security heretofore posted and make a gift to Howard J. Pobiner of the security. Mr. Pobiner has accepted sums to be paid by Lawrence Josephs in full satisfaction of my counsel fee obligation to him of $3,000 plus disbursements heretofore paid."

9. The document was signed by both the respondent and Jane Josephs.

10. Although Jane Josephs knew that the value of the ring was greater than the fee she owed to the respondent, at the time she signed the agreement, she did not know the precise amount of money she owed the respondent for legal services.

11. The respondent never intended to accept only $3,000 for all of the services he rendered.

12. The respondent accepted the ring in lieu of payment of the balance owed for legal services.

13. The respondent never advised Jane Josephs to seek independent advice before signing the aforementioned agreement.

Charge Ten, as amended, alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]):

1. The factual allegations of Charge Eight are repeated and realleged as if fully set forth herein.

2. The respondent used the word "gift" in the document he prepared and had Jane Josephs sign because the value of the ring exceeded the value of the legal services rendered and, therefore, there would be a tax consequence to the respondent for the difference.

3. Either the respondent would have to pay income taxes on the full fair market value of the ring or Mrs. Josephs would have to give the respondent the difference as a gift.

4. The respondent did not pay taxes on the full value of the ring.

Charge Eleven alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), by attempting to condition a client's settlement of a matrimonial action on the withdrawal of a complaint to the Grievance Committee by the opposing party:

1. The respondent represented Michael Suydam in a matrimonial action.

2. In a letter dated December 22, 1994, to Ms. Bedell and Mr. Blass, opposing counsel, the respondent replied to a counteroffer of settlement made on December 16, 1994.

3. In the December 22, 1994, letter, the respondent suggested that, as part of the settlement, Ann and Michael Suydam "withdraw all pending actions (including the grievance)."

Charge Twelve alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation

of Code of Professional Responsibility DR 1-102 (A) (5) (22 NYCRR 1200.3 [a] [5]):

1. The respondent represented Michael Suydam in a matrimonial action.

2. In addition, at Suydam's request, the respondent helped Suydam secure the debts that he owed to his parents, Kathleen and Milton Suydam, and to his second wife, Rae Ann Selig.

3. The respondent represented Michael Suydam, Kathleen and Milton Suydam, and Rae Ann Selig in this matter.

4. The respondent prepared three confessions of judgment and caused them to be filed (two entitled *Rae Ann Selig v Michael Suydam* and one entitled *Milton Suydam and Kathleen Suydam v Michael Suydam).*

5. The respondent knew or should have known that it was improper to represent both sides in the matter, but he nonetheless proceeded to do so anyway.

6. Most of the respondent's interactions were with Michael Suydam as opposed to Milton and Kathleen Suydam and Rae Ann Selig.

7. On the applications for index numbers for all three confessions of judgment, the respondent listed himself as the attorney for the plaintiff and listed Michael Suydam as appearing *pro se.*

8. The respondent maintained that he listed the parties in this manner by mistake and as an accommodation.

9. The respondent realized that he was listed as the attorney for the plaintiff and that such was problematic.

10. After the respondent realized his mistake, he failed to take any steps to put the court on notice.

Based on the respondent's admissions and the evidence adduced at the hearing, the Special Referee properly sustained all of the charges against the respondent except Charge Three. The Grievance Committee's motion to confirm the Special Referee's report is granted insofar as Charges One, Two, and Four through Twelve are sustained, and the motion is otherwise denied. The respondent's cross motion to disaffirm, in part, the Special Referee's report is granted insofar as Charge Three is not sustained, and the cross motion is otherwise denied.

In determining an appropriate measure of discipline to impose, we have considered the mitigating evidence offered by the respondent, including the character evidence proffered by

him, his considerable professional and charitable activities, and his domestic problems. However, the respondent is guilty of serious professional misconduct which warrants his disbarment.

MANGANO, P. J., BRACKEN, ROSENBLATT, O'BRIEN and GOLDSTEIN, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted insofar as Charges One, Two, and Four through Twelve are sustained, and the motion is otherwise denied; and it is further,

Ordered that the respondent's cross motion to disaffirm, in part, the Special Referee's report is granted insofar as Charge Three is not sustained, and the cross motion is otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Howard J. Pobiner, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Howard J. Pobiner is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.