■ CAITLIN FERRARI et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v THE NATIONAL FOOTBALL LEAGUE et al., Appellants, et al., Defendants. [61 NYS3d 421]—

Appeals from an amended order of the Supreme Court, Erie County (Timothy J. Drury, J.), entered June 14, 2016. The amended order, inter alia, granted the motion of plaintiffs for class certification.

It is hereby ordered that the amended order so appealed from is unanimously affirmed without costs.

Memorandum: The "Buffalo Jills" was the name of a cheerleading squad that performed at professional football games for defendant Buffalo Bills, Inc. (Buffalo Bills), and also participated in charity and promotional events in the community. Plaintiffs are four persons who were members of the Buffalo Jills for varying periods between 2009 and 2014. In November 2015, plaintiffs commenced this action, individually and on behalf of similarly situated persons, seeking to recover hundreds of hours of wages that allegedly were not paid to them. In their third amended and supplemental class action complaint (complaint), plaintiffs alleged, among other things, that they were deliberately misclassified as independent contractors rather than employees, and were made to sign similarly worded contracts misrepresenting them as such. The complaint asserts causes of action based upon, among other things, violations of the Labor Law and common-law fraud.

Plaintiffs subsequently moved for class certification. Each plaintiff submitted a reply affidavit in support of that motion. In those affidavits, each plaintiff averred that the members of

the Buffalo Jills were not paid for performing at Buffalo Bills games or for any of the hundreds of hours of practice they engaged in. Furthermore, they were required to model for the annual Buffalo Jills swimsuit calendar and to sell a certain number of copies of the calendar, and they were not paid for those services either. They were also required to sell tickets to an annual golf tournament, instruct young girls at an annual cheerleading camp, and attend numerous promotional events for the Buffalo Bills and its sponsors. Plaintiffs further averred that they and the other members of the Buffalo Jills were paid for some of the promotional events, but not for anything else. Plaintiffs attached to their reply affidavits their contracts, which uniformly state that they were independent contractors and would be paid on a "per appearance" basis, but not for appearing or performing at Buffalo Bills football games. Plaintiffs also attached "Codes of Conduct," which set rigid standards for their personal conduct, dress, and physique, and which gave the Buffalo Bills the right to use or republish their photos for advertising purposes.

Additionally, plaintiffs submitted in support of their motion "appearance records" from the 2012-2013 season relating to five particular members of the Buffalo Jills, which records were obtained through discovery. Those records show that one of the nonparty members of the Buffalo Jills worked 360½ hours during that season and was paid for only 17½ hours. Another such person worked 372¾ hours and was paid for 16 hours. Plaintiff Alyssa U. worked 369 hours and was paid for 13 hours. Plaintiff Maria P. worked 368½ hours and was paid for five hours. Plaintiff Melissa M. worked 383 hours and was paid for nine hours. None of the five referenced cheerleaders were paid on average more than $2.60 per hour.

We conclude that Supreme Court properly granted the motion and certified the class. Contrary to the initial contention of the National Football League, the Buffalo Bills, and Cumulus Radio Company, formerly known as Citadel Broadcasting Company (Cumulus) (collectively, defendants), the court properly considered the evidence that plaintiffs submitted with their reply papers. Although it is generally improper for a moving party to submit evidence for the first time with its reply papers, the court may consider such evidence where the opposing party has the opportunity to submit a surreply (*see Citimortgage, Inc. v Espinal*, 134 AD3d 876, 879 [2015]; *Park Country Club of Buffalo, Inc. v Tower Ins. Co. of N.Y.*, 68 AD3d 1772, 1774 [2009]). Here, the parties had the opportunity to submit surreply papers and, indeed, the Buffalo Bills' attorney

submitted a thorough surreply affirmation responding to the evidence in plaintiffs' reply papers.

We reject defendants' further contention that plaintiffs failed to meet the five requirements of CPLR 901 (a). Class action is appropriate only if all five of the requirements are met (*see Rife v Barnes Firm, P.C.*, 48 AD3d 1228, 1229 [2008], *lv dismissed in part and denied in part* 10 NY3d 910 [2008]), and the burden of establishing those requirements is on the party seeking certification (*see DeLuca v Tonawanda Coke Corp.*, 134 AD3d 1534, 1535 [2015], *lv denied* 137 AD3d 1633 [2016]). The first prerequisite is that the class must be so numerous that joinder of all of its members is impracticable (*see* CPLR 901 [a] [1]). Here, the Buffalo Bills admit that the class has approximately 134 members, and classes of 53 to 500 members have been deemed "well above the numerosity threshold contemplated by the legislature and approved by courts" (*Borden v 400 E. 55th St. Assoc., L.P.*, 24 NY3d 382, 399 [2014]).

The second prerequisite is that there are common questions of law or fact that predominate over questions affecting only individual members (*see* CPLR 901 [a] [2]). That prerequisite requires predominance of common questions over individual questions, not identity or unanimity of common questions, among class members (*see Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d 420, 423 [2010]; *Friar v Vanguard Holding Corp.*, 78 AD2d 83, 98 [1980]). It is thus well established that "the amount of damages suffered by each class member typically varies from individual to individual, [and] that fact will not prevent the suit from going forward as a class action if the important legal or factual issues involving liability are common to the class" (*Borden*, 24 NY3d at 399 [internal quotation marks omitted]; *see DeLuca*, 134 AD3d at 1536). Indeed, where " 'the same types of subterfuge[ ] [were] allegedly employed to pay lower wages,' commonality of the claims will be found to predominate, even though the putative class members have 'different levels of damages' " (*Weinstein v Jenny Craig Operations, Inc.*, 138 AD3d 546, 547 [2016]; *see Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481, 482 [2009]). Here, the common questions include whether the putative class members were employees or independent contractors and whether defendants failed to pay them in accordance with the law, and we conclude that those questions predominate over individual questions of damages.

Insofar as defendants contend that plaintiffs' common-law fraud cause of action precludes class action because it involves individual questions of reliance, we reject that contention.

Plaintiffs allege that defendants made uniform misrepresentations in the contracts that plaintiffs were made to sign, and thus reliance may be inferred from the nature of the representation and the acceptance by the plaintiffs (*see Norwalk v Manufacturers & Traders Trust Co.*, 80 AD2d 745, 745 [1981]). To the extent that defendants contend that plaintiffs' quantum meruit and unjust enrichment claims involve individual questions that preclude class action, we conclude that the common questions predominate over any such individual questions (*see generally* CPLR 901 [a] [2]; *Ackerman v Price Waterhouse*, 252 AD2d 179, 201 [1998]).

The third prerequisite is that the class representatives' claims are typical of the claims of the class (*see* CPLR 901 [a] [3]). Plaintiffs' reply affidavits and the documents attached thereto establish that they were subject to the same treatment during the 2009-2010, 2012-2013, and 2013-2014 seasons. Although none of the plaintiffs herein were members of the Buffalo Jills during the 2008-2009, 2010-2011, or 2011-2012 seasons, plaintiffs' evidence established that the Buffalo Jills had been under the same management since 2002. Moreover, plaintiffs submitted the affidavit of a putative class member who had been a member during the 2010-2011 and 2011-2012 seasons, and her averments are consistent with those of the plaintiffs in all relevant respects. We thus conclude that the third prerequisite is met because plaintiffs established that "the claims of the class representative[s] arose out of the same course of conduct and are based on the same theories as the other class members" (*DeLuca*, 134 AD3d at 1536 [internal quotation marks omitted]; *see Roberts v Ocean Prime, LLC*, 148 AD3d 525, 526 [2017]).

The fourth prerequisite is that the class representatives will fairly and adequately protect the interest of the class (*see* CPLR 901 [a] [4]). In considering this prerequisite, a court should consider any potential conflicts of interest, the parties' familiarity with the lawsuit and financial resources, and the quality of class counsel (*see Cooper v Sleepy's, LLC*, 120 AD3d 742, 743-744 [2014]). Here, plaintiffs averred in their reply affidavits that they have no conflicts of interest with any of the putative class members and that they are committed to prosecuting the case to its conclusion. Although, as defendants note, plaintiffs have waived their right to liquidated damages (*see generally* CPLR 901 [b]), that does not preclude class action inasmuch as putative class members who wish to pursue such damages may opt out of the class action and pursue them individually (*see Downing v First Lenox Terrace Assoc.*, 107

AD3d 86, 89 [2013], *affd sub nom. Borden*, 24 NY3d at 402; *Ridge Meadows Homeowners' Assn. v Tara Dev. Co.*, 242 AD2d 947, 947 [1997]). Moreover, the court observed in its written decision that plaintiffs had pursued the action "with fortitude" and that counsel had pursued the case "vigorously," and we see no reason to disturb the court's determination in that regard.

The fifth prerequisite is that class action is the superior method to fairly and efficiently adjudicate the controversy (*see* CPLR 901 [a] [5]). "[A] class action is the 'superior vehicle' for resolving wage disputes '[where] the damages allegedly suffered by an individual class member are likely to be insignificant, and the costs of prosecuting individual actions would result in the class members having no realistic day in court' " (*Stecko v RLI Ins. Co.*, 121 AD3d 542, 543 [2014]; *see Nawrocki v Proto Constr. & Dev. Corp.*, 82 AD3d 534, 536 [2011]). Notably, a class representative in a class action wage dispute is not required to have exhausted his or her administrative remedies (*see Nawrocki*, 82 AD3d at 536). Here, each plaintiff was a member of the Buffalo Jills for one season only, and each stated that some of the putative class members left "within a few months." Given the evidence that members of the Buffalo Jills worked fewer than 400 uncompensated hours in a single season, we conclude that this is a case where the cost of prosecuting individual actions would deprive many of the putative class members of their day in court. Although two putative class members have already elected to pursue their claims individually, the record demonstrates that those class members worked for the Buffalo Jills for a longer period of time and made more personal appearances, which arguably entitles them to damages several times greater than the damages sought by other class members. Thus, the fact that two putative class members exercised their right to pursue individual remedies does not controvert plaintiffs' position that class action is the superior vehicle for adjudicating the claims herein (*cf. Rife*, 48 AD3d at 1230).

Contrary to the further contention of Cumulus, plaintiffs also met the requirements of CPLR 902. Once the section 901 (a) prerequisites have been met, a court must consider the class members' interest in prosecuting individual actions; the impracticality or inefficiency of prosecuting or defending separate actions; the extent and nature of any separate action already pending; the desirability of the forum; and the difficulties likely to be encountered in managing a class action (*see* CPLR 902; *Rife*, 48 AD3d at 1229). Upon reviewing those factors, we conclude that the court properly certified the class action.

Contrary to defendants' final contention, the court properly certified three law firms as class counsel. It is within the court's discretion to allow representation by more than one counsel (*see Koehnlein v Jackson*, 12 AD3d 1185, 1186 [2004]), and we decline to disturb the court's determination in that regard. Present—Smith, J.P., DeJoseph, Curran, Troutman and Winslow, JJ.