## Ramirez v Grand Canyon Bistro Corp.

2026 NY Slip Op 31047(U)

March 17, 2026

Supreme Court, Kings County

Docket Number: Index No. 529402/24

Judge: Heela D. Capell

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 19 of the Supreme Court of
the State of New York, held in and for the County
of Kings, at the Courthouse, at 360 Adams Street,
Brooklyn, New York, on the 17 day of March,
2026.

P R E S E N T:

HON. HEELA D. CAPELL,

                    Justice.

-----------------------------------------------------------------------X

LESLIE RAMIREZ, *on behalf of herself and the Class*,

                    Plaintiff,

        -against-

GRAND CANYON BISTRO CORP.
      d/b/a GRAND CANYON BISTRO,
GRAND CANYON DINER CORP.
      d/b/a GRAND CANYON DINER,
143 MONTAGUE RESTAURANT CORP.
      d/b/a GRAND CANYON RESTAURANT,
514 RESTAURANT CORP.
      d/b/a GRAND CANYON RESTAURANT CITY,
HAPPY ONE RESTAURANT, INC.
      d/b/a MEX CARROLL'S DINER,
RIGOBERTO NARVAEZ, and
GONZALO CARRETO
      a/k/a VICTOR CARRETO,

                   Defendants.

-----------------------------------------------------------------------X

Index No. 529402/24

DECISION/ORDER

MS # 2-3

| The following e-filed papers read herein: | NYSCEF Doc Nos.: |
|---|---|
| Notice of Motion, Affidavits (Affirmations) Annexed | 18-32; 54-70 |
| Opposing Affidavits (Affirmations) | 43-51; 71 |
| Reply Affidavits (Affirmations) | 52; 72-73 |
| Other Papers: Complaint, Stipulation, Answer | 2, 8, 14 |

Upon the foregoing papers in this putative class action, inter alia, to recover damages for

violations of the Labor Law, plaintiff Leslie Ramirez ("Plaintiff") moves, under motion sequence

number two, for an order, pursuant to CPLR 901 and 902, certifying the proposed class (on

behalf of herself and others similarly situated) as pleaded in her first cause of action (Complaint,

[* 1]

¶¶ 102-112) and granting her ancillary relief, in each instance, against corporate defendants Grand Canyon Bistro Corp., d/b/a Grand Canyon Bistro ("GC-Bistro"), Grand Canyon Diner Corp., d/b/a Grand Canyon Diner (GC-Diner), 143 Montague Restaurant Corp., d/b/a Grand Canyon Restaurant ("GC-Restaurant"), 514 Restaurant Corp., d/b/a Grand Canyon Restaurant City ("GC-City"), Happy One Restaurant, Inc., d/b/a Mex Carroll's Diner ("Mex-Diner", and together with GC-Bistro, GC-Diner, GC-Restaurant, and GC-City, the "Corporate Defendants"), as well as individual defendants Rigoberto Narvaez ("Narvaez") and Gonzalo Carreto, a/k/a Victor Carreto ("Carreto," and together with Narvaez, the "Individual Defendants;" and collectively with the corporate defendants, "Defendants").

Defendants cross-move, under motion sequence number three, for an order:[1] (1) pursuant to CPLR 3211 (c), treating their cross-motion as one for summary judgment, and, thereupon, granting them summary judgment dismissing the entirety of the complaint; (2) pursuant to CPLR 3211 (a) (2) and (8), dismissing the complaint for lack of personal jurisdiction and, with respect to Plaintiff's claims under Labor Law § 195 (1) and (3), for lack of standing; (3) pursuant to CPLR 3211 (a) (5), dismissing the complaint on the basis of collateral estoppel; (4) pursuant to CPLR 3211 (a) (7), dismissing the complaint for failure to state a claim; or, in the alternative; and (5) if the court denies Defendants' motion to dismiss Plaintiff's first cause of action under CPLR 3211 (a), then severing such cause of action or (in the alternative) allowing such cause of action to proceed as an individual (rather than as a class) claim, pursuant to CPLR 906.[2]

---

[1] To maintain continuity of discussion, the court rearranged the sequence of relief requested by Defendants in their cross-motion.

[2] Defendants' additional requests (in items [v] and [vi] of their Notice of Cross Motion) for an order, pursuant to CPLR 3211 (e), accepting their cross-motion in substitute of the previously withdrawn motion to dismiss under motion sequence number one or, in the alternative, granting them leave, pursuant to CPLR 3211 (f), to file an answer were rendered moot by the court's "so-ordered" stipulation, dated August 7, 2025, and Defendants'

## Background

Plaintiff, a former non-exempt, front-of-the-house employee of defendant GC-Bistro from May 11, 2023 to January 14, 2024, commenced this action on October 30, 2024. She asserts three causes of action, the first sounding in violations of the Labor Law in terms of underpayment of compensation (both individually and class-wide), and the second and third causes of action (individually) sounding in pregnancy-related discrimination, related retaliation, and a failure to accommodate her pregnancy, under the New York State and City Human Rights Laws, respectively (NYSHRL and NYCHRL, respectively). Defendants jointly answered the complaint.

Currently, Plaintiff moves for certification of a class which she defines as "[a]ll non-exempt front-of-the-house and back-of-the-house employees (including but not limited to servers, hosts, bartenders, barbacks, food runners, bussers, cooks, dish washers, food preparers, among others) employed by [the Corporate] Defendants any time between October 8, 2018, and the date of [the certification order]," with the sub-defined "Tipped Subclass" of "all non-exempt front-of-the-house tipped employees (including but not limited to servers, hosts, bartenders, barbacks, food runners, bussers, among others) employed by [the Corporate] Defendants" during the aforementioned class period.

In support of her request for class certification, Plaintiff offers (for the most part) her supporting affirmation, together with her paystubs. Plaintiff avers (in ¶ 3 of her affirmation) that she was an employee at the Corporate Defendants' restaurants, which collectively employed at

---

interposition of their joint answer, dated March 7, 2025 (NYSCEF Doc Nos. 53 and 7, respectively). Defendants' ancillary request (in item [vii] of their Notice of Cross-Motion) for an award of "[a]ttorney's fees, costs, and all litigation costs associated with the making of [their cross-motion] is meritless.

least 40 employees at any given time.[3] Plaintiff next avers (in ¶ 5) that "[t]hroughout her employment, [she] regularly spoke with co-workers regarding [her and their] wages," and she lists (among others) Joel, Agustin, Alan, and Brandon as her co-workers. Plaintiff further notes (in ¶ 5) that: (1) Joel and Augustin (both servers) were "[t]ransferred [to her location at GC-Bistro] from other [GC] locations"; (2) Alan (also a server) worked concurrently at both GC-Bistro and GC-Restaurant; (3) Brandon (a delivery person) worked at "[a]t all [GC] locations [concurrently]"; and (4) "all employees of [the Corporate] Defendants were subject to the same wage and hour policies."

When it comes to the crux of her class claim – the underpayment of wages to her and to others similarly situated – Plaintiff avers (in ¶ 7 of her affirmation) that "[b]ased on [her] personal observations and conversations with [her] coworkers]" "[she] know[s] that [the Corporate] Defendants' tipped employees at all of their [five corporate locations] were compensated at similar [$10] hourly rates." In the next paragraph of her affirmation (¶ 8), Plaintiff further generalizes that Joel, Agustin, and Alan told her "It doesn't matter if we can clock in or out. In the end, we're only paid for our scheduled hours."

Plaintiff cites several examples of the wage underpayments which she allegedly suffered, such as: (1) no lunch breaks (¶ 9); (2) mandatory, uncompensated after-shift work (¶

---

[3] Consistent with federal law, Plaintiff presumes that "numerosity is [achieved] at a level of 40 members" (*Consolidated Rail Corp. v Town of Hyde Park*, 47 F3d 473, 483 [2d Cir 1995], *cert denied* 515 US 1122 [1995]). Under New York law, however, "[t]here is no requirement that plaintiff must identify at least 40 members to demonstrate numerosity" (*Chua v Trim-Line Hitech Constr. Corp.*, 225 AD3d 565, 566 [1st Dept 2024]). Rather, numerosity may "involve[e] as few as 18 members where the members would have difficulty communicating with each other, such as where barriers of distance, cost, language, income, education or lack of information prevent those who are aware of their rights from communicating with others similarly situated" (*Borden v 400 E. 55th St. Assoc., L.P.*, 24 NY3d 382, 399 [2014] [internal citation and quotation marks omitted]). As more fully set forth below, denial of Plaintiff's motion for class certification does not depend on whether numerosity is set at 18 or at 40 members.

10); (3) excessive, non-tipped work (for example, table cleaning) for the tipped employees like her and others similarly situated (¶ 11); (4) unfair tip sharing or an outright tip theft (¶¶ 12 and 14); and (5) no overtime and no spread-of-hours pay for mandatory work (¶ 15).

Defendants' opposition to Plaintiff's motion for class certification and their own cross-motion to dismiss, both of which are supported by affirmations by the Individual Defendants, by the Corporate Defendants' employees (including several of Plaintiff's co-workers), and by the minority owners of several Corporate Defendants, are addressed in the discussion section of this decision/order.

**Discussion**

**Plaintiff's Motion for Class Certification**

Pursuant to CPLR 902, a class action may only be maintained if each of the prerequisites enunciated under CPLR 901 (a) have been satisfied (*see Medina v Fairway Golf Mgt., LLC*, 177 AD3d 727, 727-728 [2d Dept 2019]). Pursuant to CPLR 901 (a), those prerequisites are: (1) that the class is so numerous that joinder of all members whether otherwise required or permitted is impracticable ("numerosity"); (2) questions of law or fact common to the class predominate over questions of law and fact affecting individual class members ("commonality"); (3) the claims or defenses of the class representative are typical of those in the class ("typicality"); (4) the class representatives will fairly and adequately protect the interests of the class ("adequacy of representation"); and (5) a class action represents the superior method of adjudicating the controversy ("superiority of class action") (*see Anthony v New York State Dept. of Corr. & Community Supervision*, 2025 NY Slip Op 32110[U], *10 [Sup Ct, Kings County 2025, Capell, J.]). "A class action certification must be founded upon an evidentiary basis"

5

[* 5]

(*Yonkers Contr. Co., Inc. v Romano Enters. of N.Y., Inc.*, 304 AD2d 657, 658 [2d Dept 2003]), whereas "[c]onclusory assertions are insufficient to satisfy the statutory criteria" (*Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d 420, 422 [1st Dept 2010]).

(1) Numerosity. "There is no mechanical test to determine whether . . . numerosity has been met nor is there a set rule for the number of prospective class members which must exist before a class is certified" (*Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129, 137 [2d Dept 2008] [internal quotation marks omitted]). Rather, "[e]ach case depends on the particular circumstances surrounding the proposed class and the court should consider the reasonable inferences and common sense assumptions from the facts before it" (*id.* [internal quotation marks omitted]).

(2) Commonality. "Commonality of factual and legal questions requires predominance[,] not identity or unanimity among class members" (*Dzuira v Human Dev. Assn., Inc.*, 231 AD3d 615, 617 [1st Dept 2024] [internal quotation marks omitted]). "[C]ommonality cannot be determined by any mechanical test and ... the fact that questions peculiar to each individual may remain after resolution of the common questions is not fatal to the class action" (*Maddicks v Big City Prop., LLC*, 34 NY3d 116, 125 [2019] [internal quotation marks omitted]).

(3) Typicality. "If it is shown that a plaintiff's claims derive from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory . . . [the typicality] requirement is satisfied" (*Pludeman*, 74 AD3d at 423 [internal quotation marks omitted]).

(4) Adequacy of Representation. "The three essential factors to consider in determining adequacy of representation are potential conflicts of interest between the representative and the

6

[* 6]

class members, personal characteristics of the proposed class representative (e.g. familiarity with the lawsuit and his or her financial resources), and the quality of the class counsel" (*Cooper v Sleepy's, LLC*, 120 AD3d 742, 743-744 [2d Dept 2014] [internal quotation marks omitted]).

(5) <u>Superiority of Class Action as Remedy</u>. "A class action is the superior vehicle for resolving wage disputes where the damages allegedly suffered by an individual class member are likely to be insignificant, and the costs of prosecuting individual actions would result in the class members having no realistic day in court" (*Ferrari v National Football League*, 153 AD3d 1589, 1593 [4th Dept 2017] [internal quotation marks and alterations omitted]; *see Stecko v RLI Ins. Co.*, 121 AD3d 542, 543 [1st Dept 2014]).

Here, Plaintiff, in support of her request for class certification, contends that her proposed class complies with all five requirements of CPLR 901 (a). As to numerosity, she relies on: (1) her affirmation in which she avers (as noted above) that at least 40 people were employed by the Corporate Defendants at any given time; and (2) an unauthenticated printout from a ProPublica website describing a federal loan application for GC-Bistro with 110 "jobs reported." As to commonality, Plaintiff maintains that questions of law and fact common to the class predominate over any strictly individual questions, including whether the Corporate Defendants failed (among other things) to: (1) pay for work performed during meal breaks and outside scheduled shifts; (2) pay spread-of-hours premiums for shifts longer than ten hours; and (3) disburse customer tips. As to typicality, Plaintiff asserts that she and other class members suffered similar violations while working for the Corporate Defendants. As to the remaining requirements of adequacy of representation and superiority of the class action as a remedy, Plaintiff contends that she will fairly and adequately protect the interests of the class, that her

7

[* 7]

counsel is experienced and qualified in handling class wage and hour actions, and that the common issues in this action can be most efficiently addressed on a class-wide basis.

Conversely, Defendants argue that class certification is inappropriate as Plaintiff failed to meet at least some of the foregoing requirements. Initially, Defendants contend that Plaintiff relies on speculation or conclusory allegations to establish a plausible numerosity. Next, Defendants argue that commonality is not satisfied because the majority of Plaintiff's allegations are based on pregnancy discrimination, retaliation, and a failure to accommodate her pregnancy, all of which are individual to her (as separately pleaded in her second and third causes of action of the complaint). Defendants further note that Plaintiff conceded that she worked only at GC-Bistro, and that she failed to establish that any alleged wage violations were uniformly perpetrated at each of the five separately operated Corporate Defendants.

As stated, Plaintiff's primary support for her contentions regarding the prerequisites of CPLR 901 (a) is her own affirmation. As to the numerosity, Plaintiff relies on her statement that "to [her] knowledge, Defendants always employed at least 40 employees at any given time," with a copy of a Pro Publica printout that 110 "jobs [were] reported." Plaintiff fails to provide: (1) any authentication for the Pro Publica printout; (2) any potential breakdown of the alleged jobs reported that might account for the number of putative class members as opposed to managerial or other employees; (3) any basis for her statement that the Corporate Defendants employed at least 40 employees "at any given time," or observations of how many putative class members were allegedly employed by each Corporate Defendant at a given time, such as the number of putative class members she observed employed at GC-Bistro during her eight-month employment at that location. Accordingly, Plaintiff's conclusory assertion of numerosity cannot

8

[* 8]

support a finding of numerosity, "even at the motion-to-dismiss stage"[4] (*see Mid Is. LP v Hess Corp.*, 184 AD3d 439, 440 [1st Dept 2020]; *Nicholson v KeySpan Corp.*, 65 AD3d 1025, 1025-1026 [2d Dept 2009]; *Feder v Staten Is. Hosp.*, 304 AD2d 470, 471 [1st Dept 2003]).

In addition, Plaintiff has failed to meet the commonality and typicality requirements. Plaintiff maintains that other class and subclass members were subject to the same unlawful wage policies, and that many of these fellow employees worked at the Corporate Defendant locations other than GC-Bistro and reported that the same unlawful wage policies have been instituted at those locations as well. However, Plaintiff's affirmation relies on conclusory assertions with respect to the wage policies in effect at the other locations and on vague references to non-specific conversations which she allegedly had with her co-workers regarding the wage and hour practices of the Corporate Defendants, including that it was "common knowledge" that the Corporate Defendants engaged in the unlawful compensation practices. According to Plaintiff, she knew (either from personal observations or from conversations with her co-workers) that other employees were not paid a spread of hours premium when they worked shifts over ten hours, and did not receive proper tip credit notice at the time of hiring or thereafter. In that regard, Plaintiff further avers that her coworkers Joel, Agustin, and Alan, told her that time shaving issue was also happening at other restaurant locations," and also told her that doing excessive side work was a standard practice for all tipped employees at the Corporate Defendants' restaurants. Yet, Plaintiff fails to provide the sum and substance of any of those conversations, any details regarding her specific observations, and/or any details for her conclusions regarding the time-shaving and side-work policies at any Corporate Defendant other

---

[4] *Cape Cod Charter Boat Assn. v Burgum*, 2025 WL 3182686, *6 (D DC 2025).

9

than at her location. Inasmuch as Plaintiff's affirmation relies nearly exclusively on conclusory assertions derived from non-specific hearsay conversations without corroborating affidavits from coworkers, she has failed to meet the prerequisites of typicality and commonality[5] (*see Aldape v Ocinomled, Ltd.*, 79 Misc 3d 1235[A], 2023 NY Slip Op 50811[U], \*4 [Sup Ct, NY County 2023];[6] *see also Vargas v Hungry Burrito I Inc.*, 2024 NY Slip Op 31054[U], \*8 [Sup Ct, Kings County 2024, Joseph, J.]).[7]

Inasmuch as Plaintiff has failed to satisfy the prerequisites of numerosity, commonality, and typicality, Plaintiff's motion to certify the proposed class is *denied with prejudice* (*see e.g. Burgos v B&H Healthcare Servs., Inc.*, 239 AD3d 585, 587 [2d Dept 2025]).[8]

---

[5] Assuming (without deciding) that Plaintiff's pay stubs provided some evidence of potential wage violations, their number (as limited to Plaintiff only) did not demonstrate a policy or practice of unlawful action on the part of Defendants that would warrant class treatment (*see Konstantynovska v Friendly Home Care, Inc.*, 241 AD3d 1537, 1539-1540 [2d Dept 2025]).

[6] *Aldape* is analogous with this case. In *Aldape*, Justice Dakota Ramseur of Supreme Court, NY County, stressed that the plaintiff therein did not work at three of the four restaurants comprising the alleged single integrated enterprise and, therefore, had no personal knowledge of their policies and practices. Instead, the allegations against those three other restaurants originated from conversations the *Aldape* plaintiff had with his co-workers. With respect to those three other entities, the court found that the *Aldape* plaintiff's affidavit was insufficient to support class certification because (as is the instance in this case) it relied entirely on conclusory allegations and inadmissible hearsay without providing supporting affidvatis from those employees.

[7] In *Vargas*, Justice Ingrid Joseph of this court held (at page 8) that:

"While plaintiff submits for the first time in reply a verified list of 97 potential class members who worked at the [three] Restaurants during the relevant period as proof toward the numerosity requirement, because plaintiff's affidavit is grounded predominantly upon conclusory assertions and admissible hearsay conversations plaintiff allegedly had with his coworkers regarding the wage practices of defendants, the court finds plaintiff's affidavit does not constitute the admissible proof necessary to establish the commonality and typicality elements required for class certification. *Plaintiff does not state that he worked at any Hungry Burrito location other than Ridgewood, and although plaintiff avers that he personally observed the alleged unlawful wage practices of defendants applied to other employees at the [three] Restaurants, plaintiff does not provide sufficient detail about what these 'personal observations' entailed, or allege facts upon which his personal knowledge of the alleged common and typical wage practices vis-à-vis other Hungry Burrito employees are predicated*" (emphasis added).

[8] In light of this determination, the court need not address whether plaintiff meets the additional class-certification requirements set forth in CPLR 902 (1) - (5), which, respectively, are: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the impracticability or inefficiency of prosecuting separate actions; (3) the extent and nature of any litigation concerning the controversy already commenced by or

10

**Defendants' Cross-Motion to Dismiss**

Defendants advance a multitude of reasons in support of their cross-motion to dismiss the complaint. Defendants first request that the court treat their cross-motion to dismiss as one for summary judgment, pursuant to CPLR 3211 (c), and, thereupon, grant them summary judgment, based on a total of ten supporting affirmations from the Individual Defendants, their employees, and the minority owners of the Corporate Defendants. Defendants also contend that the complaint should be dismissed for lack of personal jurisdiction in that Plaintiff failed to file proof of service of the summons and complaint with the Kings County Clerk, and further failed to serve the NYC Commission on Human Rights and the Corporation Counsel with process, as required by Administrative Code § 8-502. Defendants next maintain that Plaintiff lacks standing to bring her complaint under Labor Law § 195 (1) and (3) because her payroll records confirm she was paid for all hours worked and tips earned. Defendants further argue that collateral estoppel bars Plaintiff from relitigating the issue of whether the Corporate Defendants constitute a single integrated enterprise. Defendants also assert that Plaintiff's claims fail to state a cause of action. Lastly, Defendants request (by way of alternative relief) that Plaintiff's first cause of action for underpayment of wages be severed (as relevant herein) as an individual claim from the balance of her complaint.

(1) CPLR 3211 (c) – Conversion to Summary judgment

As noted, Defendants move, pursuant to CPLR 3211 (c), for an order treating their cross-motion to dismiss as one for summary judgment. CPLR 3211 (c) provides that, "[w]hether or

against members of the class; (4) the desirability of concentrating the litigation of the claim in the proposed class forum; and (5) the difficulties likely to be encountered in the management of a class action.

11

not issue has been joined, the court, after adequate notice to the parties, may treat the motion as a motion for summary judgment." Here, Defendants do not provide any specific argument as to why such treatment would be appropriate, and it appears that, in this action, facts that could be offered by Plaintiff in opposition to this motion, such as information regarding the interrelation, if any, of the Corporate Defendants, and whether they may be operating as a single integrated enterprise, and information regarding time-keeping, payroll, and tipping policies, may exist but lie in the exclusive knowledge of the moving party (*see Republic Nat. Bank of New York v Luis Winston, Inc.*, 107 AD2d 581, 582 [1st Dept 1985]). Where, as here, no discovery has been exchanged and the parties have not indicated that the case involves a purely legal question rather than any issues of fact, and where it appears that neither party has submitted facts and arguments clearly indicating that they were "deliberately charting a summary judgment course," the initial branch of Defendants' motion seeking for the court to consider their cross-motion as one for summary judgment is denied (*see Mihlovan v Grozavu*, 72 NY2d 506, 508 [1988] [internal quotation marks and footnote omitted]).

(2) CPLR 3211 (a) (2) and (8) – Lack of Personal Jurisdiction and Lack of Standing

To the extent Defendants argue that Plaintiff's failure to file affidavits of service deprives the court of personal jurisdiction over Defendants, her "failure to file timely proof of service does not constitute a jurisdictional defect" (*Chunyin Li v Joffe*, 210 AD3d 737, 739 [2d Dept 2022]). "Rather, the failure to file proof of service is a procedural irregularity . . . that may be cured by motion or *sua sponte* by the court in its discretion pursuant to CPLR 2004" (*id.* [internal quotation marks and alterations omitted]). Here, Defendants do not challenge Plaintiff's service of process (nor deny its receipt). Rather, they expressly accepted service of process and waived

12

all jurisdictional defenses by way of a stipulation. As Defendants have failed to establish that they have suffered any prejudice, the missing affidavits of service may be considered, at most, a procedural irregularity. Plaintiff is directed to file proof of service nunc pro tunc (*see Lemberg Foundation, Inc. v Shuttleworth Artists, Ltd.*, 78 Misc 3d 278, 282 [Sup Ct, NY County 2022], *rearg denied* 2023 NY Slip Op 30327[U] [Sup Ct, NY County 2023]). Further, "the requirement of prior service upon the [NYC Commission of Human Rights] and the Corporation Counsel is not a condition precedent to the valid commencement of an action under [T]itle 8 of the Administrative Code. Rather, the prior service requirement is designed merely to apprise the Commission and the Corporation Counsel of the actions commenced under Title 8, and late service does not mandate dismissal of the action" (*Teller v America W. Airlines*, 240 AD2d 727, 728 [2d Dept 1997] [internal citations omitted]). Accordingly, dismissal of the complaint due to Plaintiff's alleged non-compliance with Administrative Code § 8-502 (c) is not warranted (*see Bernstein v 1995 Assoc.*, 217 AD2d 512, 516 [1st Dept 1995]).

with respect to Defendants' contention that Plaintiff lacks standing to assert certain Labor Law claims, the court notes that under Labor Law § 195 (1), "employers are required to provide their employees (at the time of their hiring) notice of, among other things, the rate of pay, whether paid per hour, a salary, or commission, etc., and any allowances claimed as part of the minimum wage, including any tip allowances; similarly, under section 195 (3) employers are required to furnish employees with a wage statement with every payment of wages, listing the rate of pay and any allowances taken" (*Little v Hartz Hotel Servs., Inc.*, 81 Misc 3d 844, 846 [Sup Ct NY County 2023]). In turn, Labor Law § 198 (1-b) and (1-d) each provide that "it shall be an affirmative defense that . . . the employer made complete and timely payment of all wages due"

13

even if not provided with the notices and statements as required by Labor Law § 195 (1) and (3), respectively.

Defendants argue that Plaintiff's allegation of lack of notice could not have harmed her because she was paid for all hours worked well over the minimum requirement, and, in addition, was paid all her earned tips. At this stage of litigation, however, Plaintiff has adequately stated a claim for recovery of damages for violations of Labor Law § 195 (1) and (3) based on her allegations (which must be accepted as true) that she was *not* provided with the requisite notices and statements, and that she suffered from Defendants' failure to pay minimum wages because of the Corporate Defendants' illegal tip-credit policy. Defendants' contention to the contrary, which is supported by their self-serving affidavits, does not constitute conclusive proof warranting dismissal at the early stage of litigation (*see Okeke v Interfaith Med. Ctr.*, 224 AD3d 765, 767-768 [2d Dept 2024] ["(C)ontrary to defendants' contention, the complaint adequately stated a cause of action to recover damages for violations of Labor Law § 195 based on allegations that the wage statements . . . did not accurately reflect (the plaintiff's) wages and deductions in light of the improper withholding of a portion of his wages that he had earned for working through his meal breaks. The defendants' contention that (the plaintiff's) wage statements were accurate presupposes that there was no improper withholding of any portion of his wages that he had earned for working through his meal breaks, as does their purported affirmative defense of complete and timely payment of all wages due."] [internal citations omitted]). Accordingly, the branch of Defendants' cross-motion for dismissal of plaintiff's claims for lack of standing under Labor Law § 195 (1) and (3) is denied.

14

(3) <u>CPLR 3211 (a) (5) – Collateral Estoppel</u>

Defendants next argue that the doctrine of collateral estoppel bars Plaintiff from asserting that the Corporate Defendants constituted a single integrated enterprise. "The doctrine of collateral estoppel, which applies only to parties who were either *a party, or in privity with a party, to a prior action* . . . bars relitigation of an issue which has *necessarily been decided* in that prior action . . . and is determinative of the issues disputed in the present action, provided that there was a full and fair opportunity to contest the decision now alleged to be controlling" (*Bravo v Atlas Capital Group, LLC*, 196 AD3d 627, 628 [2d Dept 2021] [emphasis added]). "Privity may be found where a nonparty to a prior litigation has a relationship with a party to the prior litigation such that his or her own rights or obligations in the subsequent [litigation] are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation" (*New York State Thruway Auth. v Ketco, Inc.*, 195 AD3d 630, 632 [2d Dept 2021] [internal quotation marks and alterations omitted]). "The party asserting the conclusive effect of a prior [determination] has the burden to establish it" (*Bravo*, 196 AD3d at 629).

Defendants' contention that the identical issue of whether the Corporate Defendants constituted a single integrated enterprise was fully litigated and decided in *Villada v Grand Canyon Diner*, 2024 WL 3875778 (ED NY 2024), is belied by the very decision they cite. In *Villada*, the plaintiff, an employee of GC-Diner, brought an action in the United States District Court for the Eastern District of New York (the District Court) against the corporate and individual defendants for violations of: (1) Title VII of the Civil Rights Act; (2) the NYSHRL; (3) the NYCHRL; (4) the Fair Labor Standards Act (FLSA); and (5) Labor Law § 190 et seq. Thereafter, the *Villada* plaintiff moved for partial summary judgment on the issue of liability as

15

to her claims as grounded on (1) the FLSA and the Labor Law overtime violations; (2) Title VII, NYSHRL, and NYCHRL hostile work environment; and (3) the Labor Law wage-notice claims. She argued (as relevant herein) that the corporate defendants constituted a single integrated enterprise for purposes of Title VII, FSLA, and Labor Law. The District Court denied plaintiff's motion for partial summary judgment, holding (in relevant part) that:

> "Plaintiff fails to offer any admissible evidence suggesting that any of the [c]orporate [d]efendants, aside from the [GC-]Diner, had any sort of direct employer responsibility over her. This lack of any direct interaction by Plaintiff with any of the restaurants beyond the [GC-Diner] leads the Court to conclude that the [c]orporate [d]efendants did not constitute a single integrated enterprise, and therefore, even if aggregation were appropriate under Title VII, . . . it would not be appropriate based on the facts of this case."

*Villada*, 2024 WL 3875778, *8 (footnote omitted).

In an accompanying footnote, the District Court extended its denial to encompass the *Villada* plaintiff's FLSA and Labor Law claims:

> "The Court notes that its conclusion that the [c]orporate [d]efendants do not constitute a single integrated enterprise would also apply to Plaintiff's FLSA and [Labor Law] claims. The Court declines to make findings regarding which, if any, of the Defendants employed Plaintiff for purposes of the FLSA and [Labor Law], but notes that it is undisputed that Plaintiff only worked for, and was paid by, the [GC-]Diner and did not work at any of the other restaurants owned by . . . Carreto."

*Villada*, 2024 WL 3875778, *8 n 6.

*Villada* is not applicable to the facts of this case for two reasons. First, "[t]he denial of a motion for summary judgment is not a bar to a similar motion in a subsequent action because it is not an adjudication on the merits" (*Neighborhood Partnership Hous. Dev. Fund v Blakel Const. Corp.*, 34 AD3d 303, 304 [1st Dept 2006]). Second, Plaintiff was not a party to, nor had any connection with, the *Villada* action, sufficient to establish privity or to warrant the application of collateral estoppel herein (*see Bravo*, 196 AD3d at 629). Accordingly, the doctrine

16

of collateral estoppel cannot preclude Plaintiff from asserting that the Corporate Defendants acted as a single integrated enterprise.

(4) CPLR 3211 (a) (7) – Failure to State a Claim

"On a motion to dismiss for failure to state a cause of action pursuant to CPLR 3211 (a) (7), a court must accept the facts as alleged in the complaint as true, accord the plaintiffs the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Acala v Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*, 222 AD3d 706, 707 [2d Dept 2023] [internal quotation marks omitted]). "A motion to dismiss merely addresses the adequacy of the pleading, and does not reach the substantive merits of a party's cause of action. Therefore, whether the pleading will later survive a motion for summary judgment or whether the party will ultimately prevail on the claims, is not relevant on a pre-discovery motion to dismiss" (*Kaplan v New York City Dept. of Health & Mental Hygiene*, 142 AD3d 1050, 1051 [2d Dept 2016] [internal quotation marks omitted]). "When evidentiary material is considered on a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7) . . . the criterion is whether the plaintiff has a cause of action, not whether he or she has stated one, and, unless is has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate" (*Kaplan*, 142 AD3d at 1052 [internal quotation marks omitted]). Affidavits or affirmations "submitted by a defendant will almost never warrant dismissal under CPLR 3211 unless they establish conclusively that the plaintiff has no cause of action" (*Bokhour v GTI Retail Holdings, Inc.*, 94 AD3d 682, 683 [2d Dept 2012] [internal quotation marks and alterations omitted]).

17

[* 17]

Defendants argue that Plaintiff has failed to provide sufficient factual support to demonstrate that the Corporate Defendants operate as a single integrated entity, contending that the ten factual witness affirmations and statements which they offered demonstrate that there is no centralized control of labor or interrelation of operations among the Corporate Defendants, and that each operates as its independent small business from the other. Generally, "[t]he single employer doctrine imposes liability where two nominally separate entities are part of a single integrated enterprise" (*Quino v Heburechnaya I.S., Inc.*, 230 AD3d 601, 603 [2d Dept 2024] [internal quotation marks omitted]). "Whether a group of entities qualifies as a single integrated enterprise turns on four factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control" (*Shujing Yu v Mask Pot, Inc.*, 241 AD3d 726, 730 [2d Dept 2025] [internal quotation marks omitted]). "Generally, facts that go to the existence of a single, integrated enterprise include common décor, name, menu and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses" (*id.* [internal quotation marks omitted]). "However, of the four factors, the most critical factor . . . is the . . . centralized control of labor[,]" and "'[i]n determining whether there is a centralized control of labor, the critical question is what entity made the final decision regarding employment matters related to the plaintiff" (*id.* [internal quotation marks and alterations omitted]).

[* 18]

Here, Plaintiff has sufficiently pleaded at the pre-discovery stage of litigation that the Corporate Defendants operated a single integrated enterprise. As a threshold matter, Defendants formally admitted the allegations of the complaint that:

> "The Restaurants are operated by Defendants as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose. The Restaurants are commonly owned through the common control of Individual Defendant . . . Carreto who holds an executive position in all the entities and has the power to make binding decisions for the entities."

Defendants' Answer dated March 7, 2025, ¶ 12 (unnecessary capitalization omitted); Complaint, ¶ 12.

Plaintiff further alleges that the Corporate Defendants offer similar menus, and, in that regard, references several newspaper articles in which Individual Defendants are allegedly referred to and advertised as an interconnected family of restaurants with a common menu, business purpose, and ownership. Plaintiff next alleges that employees are transferred between the Corporate Defendants, that she was interviewed for a position at the GC-Bistro at another restaurant, and that Carretto acts as the principal and liquor license holder for all the Corporate Defendants. Although Defendants provide affirmations from the Individual Defendants that each Corporate Defendant is a separate enterprise, with each holding its own commercial lease and operating its own payroll account, "[a] motion to dismiss pursuant to CPLR 3211 (a) (7) in which the movant relies upon evidence beyond the four corners of the complaint must be denied unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it" (*808 Union St., LLC v J. Lehman Park Slope, LLC*, 216 AD3d 883, 884 [2d Dept 2023] [internal quotation marks omitted]).

Moving on to Plaintiff's claims under the NYSHRL and the NYCHRL (as pleaded in the second and third causes of action in the complaint, respectively), the court notes that Defendants' sole argument is that such claims are conclusory and do not provide sufficient factual detail to support the alleged violations, and that her allegations of discrimination and retaliation are unsupported by evidence and are contradicted by Defendants' documented efforts to accommodate her needs. Generally, "[a] plaintiff alleging discrimination in employment in violation of the NYSHRL must establish that (1) she or he is a member of a protected class, (2) she or he was qualified to hold the positions, (3) she or he suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination" (*Margarita v Mountain Time Health, LLC*, 240 AD3d 584, 586 [2d Dept 2025] [internal quotation marks omitted]). "Similarly, to state a cause of action to recover damages for . . . discrimination in violation of the NYCHRL, a plaintiff must allege that (1) [she or] he . . . is a member of a protected class, (2) [she or] he . . . was qualified to hold the position, (3) [she or] he . . . was subject to an unfavorable change or treated less well than other employees, and (4) the unfavorable change or different treatment occurred under circumstances giving rise to an inference of discrimination" (*id.* [internal quotation marks and alterations omitted]). Here, Plaintiff alleged that, as a result of her pregnancy, she "gained an increased appetite, . . . required more frequent urinations, and . . . needed additional rest days" (Complaint, ¶ 57). Plaintiff alleges that she "made numerous requests to her managers to take days off or switch shift," but that each of her requests was denied (Complaint, ¶ 58) Moreover, Plaintiff alleges that she was subject to discriminatory remarks regarding her frequent snacking and restroom usage throughout her shift, as well as her "depleted energy levels, all of which were direct results of her pregnancy"

20

[* 20]

(Complaint, ¶ 69). Plaintiff also alleges that Defendants "unilaterally reduc[ed] [her] scheduled days, simply based on her pregnancy" and later compelled her to take a leave of absence (Complaint, ¶¶ 72-77). Although Defendants contend that evidentiary material submitted in support of their cross-motion conclusively establishes that Plaintiff has no cause of action, they failed to support their arguments with any speicifity, insofar as Plaintiff's claims of pregnancy discrimination, retaliation, and a failure to accommodate her pregnancy are concerned (*see Baldwin v Bank of Am., N.A.*, 42 Misc 3d 1203[A], 2013 NY Slip Op 52194[U], *8 [Sup Ct, Kings County 2013, Battaglia, J.]).

(5) <u>CPLR 906 – Continuation of Plaintiff's First Cause of Action as Individual Claim</u>

Lastly, Defendants contend that Plaintiff's class claims as pleaded in the first cause of action must be dismissed for failure to state claim because (as noted) she failed to establish the class-certification requirements. In the alternative, Defendants request, pursuant to CPLR 906, that if Plaintiff's class claims in the first cause of action are *not* dismissed, then such cause of action should be severed and/or continued solely as an individual claim.

In reviewing a pre-certification motion to dismiss, "it will generally be premature to dismiss class action allegations before an answer is served or pre-certification discovery has been taken" (*Griffin v Gregory's Coffee Mgt. LLC*, 191 AD3d 600, 600 [1st Dept 2021] [internal quotation marks omitted]). Here, however, Defendants' cross-motion was made in response to Plaintiff's motion for class certification, and Defendants have filed an answer. As stated, Plaintiff has failed to establish the prerequisites of numerosity, typicality, and commonality and, therefore, has failed to establish that class certification is appropriate. Moreover, Plaintiff has not, either in her motion or before her motion, sought any alternative relief, such as pre-

[* 21]

certification discovery, to the extent that any such discovery might have helped her establish those prerequisites through submission of admissible evidence, or any extension of time to establish the appropriateness of a class action or ameliorate any deficiencies (*see e.g. Shultz v Cambridge Dev., LLC*, 200 AD3d 624, 626 [1st Dept 2021] Accordingly, the remaining branch of Defendants' cross-motion for dismissal of the first cause of action alleging violations of the Labor Law is granted, and the class-related claims are dismissed with prejudice.

However, Plaintiff has adequately stated the cause of action alleging violations of the Labor Law on an *individual basis*. Defendants argue that the allegations regarding unpaid wages, invalid tip credit policy, and unlawful tip retention lack the necessary specificity and factual support to establish a plausible claim, emphasizing that they have consistently complied with wage and hour laws. New York's pleading standard is embodied in CPLR 3013, which provides that "[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." Contrary to Defendants' contention, Plaintiff's first cause of action, as supported by her allegations of unpaid wages, failure to provide the required tip notice credit, improper tip retention, failure to maintain proper tip pool records, and failure to pay spread of hours premiums, is pleaded with sufficient particularity to give notice of the occurrences intended to be proved and the material elements of her cause of action (*see e.g. Cabrera v Deadwood Constr., Inc.*, 226 AD3d 743, 744 [2d Dept 2024]; *Okeke*, 224 AD3d at 768; *Silvers*, 218 AD3d at 819; *Lomeli v Falkirk Mgt. Corp.*, 179 AD3d 660, 663 [2d Dept 2020]). Accordingly, the remaining branch of Defendants' cross-

[* 22]

motion to dismiss the first cause of action as pleaded by Plaintiff *individually* (rather than as a class-related claim) is *denied*.

All arguments raised on the motion and cross-motion, as well as all evidence submitted by the parties in connection thereto, have been considered by the court, regardless of whether they are specifically discussed herein.

## Conclusion

Accordingly, it is

**ORDERED** that Plaintiff's motion, under motion sequence number two, is *denied with prejudice*; and it is further

**ORDERED** that Defendants' cross-motion, under motion sequence number three, is *granted solely to the extent* that Plaintiff's first cause of action for violations of the Labor Law, *insofar as it is asserted on behalf of the putative class members*, is dismissed *with prejudice* and without costs/disbursements, and the remainder of their cross-motion is denied; and it is further

**ORDERED** that Defendants' counsel is directed to electronically serve a copy of this decision/order with notice of entry on Plaintiff's counsel and to electronically file an affidavit of service thereof with the Kings County Clerk; and it is further

**ORDERED** that Plaintiff's counsel is directed to electronically file proof of service of process for each Defendant within 15 days of electronic entry of this decision and order.

This constitutes the decision/order of the Court.

E N T E R,

_____

HON. HEELA D. CAPELL, J.S.C

23